SHORT RECORD
NO. 26-2473
FILED 07/14/2026

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

AFTERSCHOOL FOR CHILDREN AND TEENS NOW (ACT NOW) COALITION and METROPOLITAN FAMILY SERVICES,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF EDUCATION and LINDA McMAHON, in her official capacity as Secretary, U.S. Department of Education,

*Defendants*.

Case No. 1:25-cv-15704

Hon. Martha M. Pacold

**NOTICE OF APPEAL**

Please take notice that Plaintiffs Afterschool for Children and Teens Now (ACT Now) Coalition and Metropolitan Family Services ("Plaintiffs") hereby appeal to the United States Court of Appeals for the Seventh Circuit from the Memorandum Opinion and Order [ECF No. 62] entered on June 26, 2026, denying Plaintiffs' Motion for a Preliminary Injunction [ECF No. 46] in this matter.

Dated: July 13, 2026

Respectfully submitted,

/s/ *Jocelyn Skinner*

Jocelyn (Josie) E. Skinner (*pro hac vice*)
Emily K. Merolli (*pro hac vice*)
SLIGO LAW GROUP, PLLC
1717 K St. NW, Suite 900
Washington, DC 20006
Telephone: (202) 888-2084
josie@sligolawgroup.com
emily@sligolawgroup.com

/s/ *Aneel Chablani*

Aneel L. Chablani (No. 6242658)
Michael R. Ortega (No. 6339469)
CHICAGO LAWYERS' COMMITTEE FOR CIVIL RIGHTS
25 E. Washington St., Suite 1300
Chicago, IL 60602
Telephone: (312) 630-9744
Facsimile: (312) 630-1127
achablani@clccrul.org
mortega@clccrul.org

/s/ *Scott C. Solberg*

Scott C. Solberg (No. 6204487)
Alec Solotorovsky (No. 6297666)
Elizabeth M. Hady (No. 6316542)
EIMER STAHL LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Facsimile: (312) 692-1718
ssolberg@eimerstahl.com
asolotorovsky@eimerstahl.com
ehady@eimerstahl.com

*Attorneys for Plaintiffs Afterschool for Children and Teens Now (ACT Now) Coalition and Metropolitan Family Services*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the attached notice was served on all counsel of record on this 13th day of July, 2026 via the Court's ECF system.

*/s/ Scott C. Solberg*
Scott C. Solberg

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

AFTERSCHOOL FOR CHILDREN AND TEENS (ACT) NOW and METROPOLITAN FAMILY SERVICES,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF EDUCATION and LINDA MCMAHON, in her official capacity as Secretary, U.S. Department of Education,

Defendants.

Case No. 1:25-cv-15704

Judge Martha M. Pacold

## MEMORANDUM OPINION AND ORDER

Plaintiffs' motion for a preliminary injunction [46][1] is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff ACT Now is "a statewide unincorporated organization based in Illinois" that, among other goals, "works to expand access to high-quality out-of-school time." [1] ¶ 12. Plaintiff Metropolitan Family Services ("MFS") is "an Illinois nonprofit" which, among other tasks, "holds ACT Now's federal grant awards." *Id.* ¶ 11. Defendants are the Department of Education ("Education"), which is "responsible for administering federal education grant programs," and Linda McMahon, the Secretary of Education. *Id.* ¶¶ 14–15.

Education administers a grant program called the "Full-Service Community Schools (FSCS) program," which "is a discretionary grant program authorized by Title IV." *Id.* ¶ 20 (citing 20 U.S.C. §§ 7271–75). A few pieces of information about how FSCS grants are structured are relevant. Education "approves grants that span multi-year project periods," but Education only "awards funds for an initial budget period" lasting about a year. *Id.* ¶ 27. Education then awards funds through "the remainder of the project period through regular continuation awards." *Id.* (citing 34

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph number citations. Page numbers refer to the CM/ECF page number.

C.F.R. § 75.251(a)–(b)). "Continuation awards are made," in part, if "the grantee continues to meet multiple, specific regulatory requirements concerning grant performance [and] financial reporting." *Id.* (citing 34 C.F.R. §§ 75.118, 75.253(a)(1)–(4)). But those are not the only requirements. Education must also "determine that continuing the project is 'in the best interest of the Federal Government.'" *Id.* (quoting 34 C.F.R. § 75.253(a)(5)).

ACT Now was awarded two FSCS grants, the potential remaining value of which is millions of dollars. When it applied for those grants, ACT Now made numerous statements in its grant application about what it intended to use, or could use, the grant funds for. Those statements include the following:

- "ACT Now has already developed a variety of trainings" such as "professional development on equity and inclusion."
- "ACT Now . . . offer[s] Gender and Sexuality in OST 101 and 102 professional development courses."
- "ACT Now" "hosts a variety of trainings for educators focused on trauma-informed care and racial equity."
- "ACT Now has developed a variety of trainings . . . to support violence prevention in youth development programs, including . . . Cultural Competency, and Gender and Sexuality."
- "[E]quity is intentionally and sustainably integrated into all that we do[.]"

[3-4] at 40, 63, 144. The court, as a shorthand, refers to these projects as "Diversity, Equity, and Inclusion-related projects," or "DEI-related projects," throughout the remainder of the opinion.

"On December 12, 2025," "the Department issued Notices of Non-Continuation for both grants." [1] ¶ 36. In its notices of non-continuation, which are nearly identical, Education stated that "applicant *has proposed project activities* that conflict with the Department's policy of prioritizing merit, fairness, and excellence in education." [3-7] at 2 (emphasis added). As examples, Education noted that ACT Now claimed, in its grant applications, to be "a statewide leader in providing trainings on gender and sexuality," that ACT Now "has access to a variety of partners and content experts that develop curriculum focused on inclusion, such as the 1619 project," and that it "hosts a variety of trainings for educators focused on trauma-informed care and racial equity." *Id.*

ACT Now then requested reconsideration. In its request, it clarified that it "provide[s] services to *all* students." [3-8] at 3. It also clarified that it had "never provided . . . development courses on gender or sexuality as part of the FSCS grant" and that "it has not implemented the" DEI-related trainings mentioned by Education in the notice of non-continuation. *Id.* at 3–4.

Education nevertheless denied reconsideration, reiterating that ACT Now, in its grant application, had stated that it would "actively ensure that equity is intentionally and sustainably integrated into all that [it] [would] do" and that what services it would provide in the future would be determined by "needs assessment[s]" of the "communit[ies]" ACT Now was servicing. [3-15] at 2–3 (labeled as Exhibit 23).

Plaintiffs sued, bringing eight counts. *See* [1]. The court dismissed Counts I–VI for want of jurisdiction in a contemporaneously-filed opinion. *See* [60] at 28. But in that opinion, the court also found that jurisdiction over Counts VII–VIII is likely (although with reservations, as precedent is unclear). *See id.* Those counts allege violations of the Free Speech clause of U.S. Const. amend. I. Count VII alleges that Education violated plaintiffs' free speech rights by denying them funding for "expressing their mission, values, and commitments in their grant applications." [1] ¶ 101. This, plaintiffs allege, constituted "penaliz[ing] [p]laintiffs not for what they did with federal funds, but for what they said about their beliefs, values, and experience." *Id.* ¶ 105. Count VIII alleges Education violated plaintiffs' free speech rights by "conditioning continuation funding on whether [p]laintiffs' previously approved applications align with the current Administration's preferred viewpoints." *Id.* ¶ 112.

As remedies, plaintiffs request several things: to "Declare that the Department's actions violate [p]laintiffs' rights under the First Amendment," to "Vacate and set aside the Notices of Non-Continuation and Denials of Request for Reconsideration issued to [p]laintiffs for its Full-Service Community Schools grants," to "Order the Department to, consistent with applicable statutes and regulations, review [p]laintiffs' eligibility for a continuation award and, if necessary, to release such funding," to "Preliminarily and permanently enjoin the Department, its officers, agents, servants, employees, and all persons acting in concert with it from enforcing the challenged Notices of Non-Continuation and Denials of Request for Reconsideration," and to "Enjoin the Department from denying continuation funding based on . . . viewpoint-based criteria." [1] at 25–26. Plaintiffs also requested a few other things; namely, to retain jurisdiction over the case, award attorneys' fees, and grant other "just and proper" relief. *Id.* at 26.

Plaintiffs then filed for a preliminary injunction. *See* [46]. Plaintiffs request that the court preliminarily enjoin Education "from enforcing the Notices of Non-Continuation of Plaintiffs' Full-Service Community Schools grants" and preliminarily enjoin Education "from non-continuing Plaintiffs' grants pending a final determination of" their "claims on the merits." *Id.* at 3. After full briefing on the motion, on June 8, 2026, the court held a preliminary injunction hearing. *See* [54]. At that hearing, plaintiffs presented five witnesses who spoke to the services plaintiffs provide and to the harm that they believe would ensue if their funding is not restored and testified that no funds thus far have been used for DEI-related projects. Defendants did not present evidence or cross-examine plaintiffs' witnesses. The parties then provided legal argument on the motion.

## ANALYSIS

After a few brief notes on the legal principles governing the issuance of preliminary injunctions, the court turns to plaintiffs' likelihood of success in this suit. Because plaintiffs are unlikely to succeed, a preliminary injunction is unwarranted.

### I. Preliminary Injunction Standard

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

A few features of preliminary injunctions are worth noting.

To start, the first *Winter* factor is mandatory—the absence of a likelihood of success on the merits is dispositive. *See, e.g.*, *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020).

Next, in the context of a preliminary injunction, unsolved issues of jurisdiction go to *Winter*'s first factor. Ordinarily, courts must address issues of jurisdiction before deciding the merits of a case. *See, e.g.*, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). But *Winter*'s phrasing—that courts must assess the likelihood of success on the merits—is somewhat imprecise. While *Winter* charges courts with making a prediction about the merits, what *Winter* really tasks courts with is making a prediction about the likely "outcome of the case." *Mullin v. Doe*, 609 U.S. __, __ (2026) (plurality opinion) (slip op. at 19); *see also Am. Fed'n of Teachers v. Bessent*, 152 F.4th 162, 169 n.3 (4th Cir. 2025) (Richardson, J.) (citing *Murthy v. Missouri*, 603 U.S. 43, 58 (2024)) (courts evaluate "the party's likelihood of success *in the lawsuit before the court*."), *abrogated in part on other grounds*, *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361 (4th Cir. 2026) (en banc). And that prediction, the Supreme Court has explained, includes both merits and jurisdictional issues. *Mullin*, 609 U.S. at __ (slip op. at 19); *Murthy*, 603 U.S. at 58 (analyzing the likelihood of a litigant establishing standing, a jurisdictional issue, in the *Winter* analysis). That is because "the likelihood that the court has jurisdiction over a claim and the likelihood that the claim is meritorious both bear on the claim's ultimate prospects." *Mullin*, 609 U.S. at __ (slip op. at 19). Courts, then, may factor in a plaintiff's likelihood of establishing jurisdiction while evaluating *Winter*'s first factor and need not definitively solve outstanding jurisdictional questions before issuing, or declining to issue, a preliminary injunction.[2]

---

[2] The court notes one interesting, yet ultimately non-dispositive, consideration regarding the first *Winter* factor. A panel of the Fourth Circuit has analyzed what it means to make a merits prediction, in the context of evaluating *Winter*'s first factor, when "a plaintiff must prevail on

Finally, it is worth reiterating that a "preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. Interim relief is an exception to the norm and allows a litigant to obtain relief without first definitively proving his case. That is justified under certain circumstances, but it is not justified just because a litigant claims they have a claim and that they would be harmed if an injunction is not granted. Unless a plaintiff can meet its burden, the default rule is that a preliminary injunction should not be granted.

With those background principles established, the court turns to plaintiffs' likelihood of success in this suit.

## II. Plaintiffs Are Unlikely To Succeed In This Suit

To be entitled to a preliminary injunction, plaintiffs must establish that they are likely to prevail. As explained above, whether plaintiffs are so likely turns both on whether they can establish the court has jurisdiction as well as on whether they will succeed on at least one of their remaining substantive counts. The court takes those issues in turn.

### A. Whether the court has jurisdiction is debatable

As explained in the court's prior opinion, the court is inclined to find that the Tucker Act likely does not bar Counts VII–VIII of the complaint, but that is debatable. *See* [60] at 28. The Tucker Act, roughly speaking, bars claims founded upon contracts

---

a first issue," like jurisdiction, and then "on a second issue" "to ultimately receive relief." *Bessent*, 152 F.3d at 170. That panel dubbed "this structure" a "multiplicative problem" where the plaintiffs' "likelihood of success overall is the product of their probability of success on each of the independent, dispositive issues." *Id.* That, the panel contended, is simply a result of basic arithmetic. *Id.* Naturally, the panel explained, "[i]f 'success' means flipping heads every time, the more coins you need to flip, the less likely you are to win." *Id.* And that means that when there are successive and independent issues, it becomes harder for plaintiffs to win, for "as probabilities are multiplied, their product shrinks rapidly": "[e]ven if a plaintiff has good odds to win any one issue, their overall odds" may "crater because they must run the table to ultimately prevail." *Id.* If that panel decision is right, its logic would apply in this case because the plaintiffs must prevail on jurisdiction *and* at least one of Counts VII and VIII to ultimately succeed.

The *en banc* Fourth Circuit, however, has criticized that seemingly unobjectionable arithmetic. *See Soc. Sec. Admin.*, 172 F.4th at 366 (disavowing the multiplicative approach). The court, therefore, clarifies that the correctness of this "multiplicative problem" has no bearing on its analysis. The court concludes that plaintiffs are simply unlikely to succeed on either Count VII or VIII, *see* § II(B), *infra*, meaning that the likelihood of success on jurisdiction is ultimately irrelevant to the propriety of a preliminary injunction. What result would obtain if plaintiffs were only ever so slightly likely to succeed on both jurisdiction *and* at least one of Count VII or VIII is a question reserved for another day.

with the federal government. *Id.* at 5–7. Plaintiffs have sued, contesting actions which Education took pursuant to a grant contract. *See, e.g.*, *id.* at 1–5, 15. While plaintiffs have not brought a breach of contract claim, well-established precedent recognizes that litigants often attempt to evade the jurisdictional limitations imposed by the Tucker Act with crafty pleading. *Id.* at 7–8. And precedent provides a test for whether plaintiffs have so attempted. Whether a claim is a contract claim in disguise turns on two considerations, the so-called *Megapulse* factors: whether the source of the rights they are asserting is contractual, and whether the remedies they seek (or which are appropriate) are contractual. *Id.* at 7 (first citing *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982); and then citing *Evers v. Astrue*, 536 F.3d 651, 657–58 (7th Cir. 2008)).

In this case, for Counts VII and VIII in particular, the jurisdictional question is a difficult one. The rights plaintiffs assert are not contractual—plaintiffs assert some constitutional rights which are truly independent of any contractual arrangement. *Id.* at 21–22. The remedies they seek, however, present a more difficult question. *Id.* at 22–28. All of them would impact the parties' contractual arrangement, and some of them are directly contractual in that they seek to enforce obligations which only exist because of the grant contract, including the obligation to release funds that may become owed on the grant contract. *See id.* The litigants have not given the court any source of authority one way or the other about whether the Tucker Act applies in such a situation; that is, when the two *Megapulse* factors point in opposite directions. In the court's estimation, it likely has jurisdiction because at least some of plaintiffs' requested remedies are non-contractual. *See id.* at 25, 28. But as explained, the court reserves definitive judgment for a later date given the complexity of this issue. *See id.* at 28.

Even if the court has jurisdiction, to succeed in this suit plaintiffs must also demonstrate that Education likely imposed an unconstitutional condition or violated the First Amendment when making funding decisions.

### B. Plaintiffs have not demonstrated that Education likely imposed an unconstitutional condition on funding or that it likely violated the First Amendment

Plaintiffs allege Education violated the First Amendment when it elected not to continue their grants. Specifically, Count VII alleges that Education discontinued their grant funding in retaliation for plaintiffs "expressing their mission, values, and commitments in their grant applications," which, plaintiffs claim, "penalize[d] [p]laintiffs not for what they did with federal funds, but for what they said about their beliefs, values, and experience." [1] ¶¶ 101, 105. Plaintiffs also allege in Count VIII that Education placed an unconstitutional condition on their funding by "conditioning continuation funding on whether [their] previously approved applications align[ed] with the current Administration's preferred viewpoints." *Id.* ¶ 112.

Those two issues are intertwined, so the court addresses them together. The court begins with a summary of the relevant law governing the provision of government subsidies. The court then evaluates whether plaintiffs have adequately demonstrated that Education is likely to have violated their rights. They have not. That is because the record does not support the notion that plaintiffs were subject to any conditions on speech unrelated to what they proposed to use grant funding for. The record also does not support the notion that plaintiffs were retaliated against for their viewpoints generally. Rather, the record suggests they were denied grant funding because of what they proposed to do with that funding.

### *1. The law*

The general rule regarding government subsidies appears to be that the government may "selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 588 (1998) (quoting *Rust v. Sullivan*, 500 U.S. 173, 193 (1991)). Where the government picks a position on how to tackle a problem and chooses to fund projects that accord with that position, the Supreme Court has explained, "'the Government has not discriminated on the basis of viewpoint; it has merely chosen to fund one activity to the exclusion of the other.'" *Id.* (quoting *Rust*, 500 U.S. at 193)). For example, under *Rust,* the government may choose to fund "family planning" services and "may [also] 'make a value judgment favoring childbirth over abortion, and . . . implement that judgment by the allocation of public funds.'" *Rust*, 500 U.S. at 192–93 (quoting *Maher v. Roe*, 432 U.S. 464, 474 (1977)).

It is no doubt true that when the government provides funding selectively, it expresses, or at least supports, a particular viewpoint. It is also no doubt true that when the government picks between potential grantees based on the services they provide (or might provide) and whether it agrees with those services, that choice supports the government's viewpoint on the proper way of solving problems and disfavors other viewpoints. Nevertheless, the law seems to permit the government to express such a viewpoint and to so pick between services to fund: "the Government may allocate competitive funding according to criteria that would be impermissible were direct regulation of speech or a criminal penalty at stake. So long as legislation does not infringe on other constitutionally protected rights, Congress has wide latitude to set spending priorities." *Finley*, 524 U.S. at 587–88; *accord Rust*, 500 U.S. at 194 (it is not true "that if the government chooses to subsidize one protected right, it must subsidize analogous counterpart rights.").[3] And that is no less true where that

[3] The court is cognizant that the Ninth Circuit has suggested otherwise. In *Thakur v. Trump*, the Ninth Circuit held that "where the government establishes a subsidy program, it may not discriminate between speakers within that program to suppress viewpoints." 176 F.4th 1187, 1200 (9th Cir. 2026). The court agrees that precedent indicates that the government may not place conditions on funding that regulate what grantees may say outside of the

which is not funded is a protected form of expression. "The Supreme Court has repeatedly drawn a line between government regulation of speech, on one hand, and government subsidy of speech, on the other," noting that "the government is not required to subsidize activity simply because the activity is protected by the First Amendment." *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 24 F.4th 640, 646 (7th Cir. 2022).

But while the government has "wide latitude to set spending priorities," *Finley*, 524 U.S. at 588, its latitude is not unlimited. Even where "a person has no 'right' to a valuable governmental benefit," the government nevertheless "may not deny [that] benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). That said, because of the government's wide latitude and ability to pick and

---

contours of the grant program, and that the government may not deny funding because of a grantee's viewpoints generally, as explained below. *See also Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 221–24 (2013) (Scalia, J., dissenting) (recognizing, but dissenting from the correctness of, this line).

But the Ninth Circuit appears to have gone further. The district court decision it reviewed concluded the government had aimed "to suppress" "particular point[s] of view" at least in part because it had declined to fund "grants that focused on or promoted" DEI-related environmental projects. *Id.* at 1201. The Ninth Circuit found that such a funding decision was an impermissible "penalty on disfavored viewpoints." *Id.* at 1202 (quotation omitted). But that seems to run headfirst into *Rust*, where the government established a grant for family planning services and then disallowed the use of grant funds to advocate for, or facilitate, abortion. The Supreme Court was clear that such selective funding of projects is permissible.

To distinguish *Rust*, the Ninth Circuit would draw a distinction between "creating or ceasing a particular program . . . and discriminating against disfavored speaker viewpoints within a program." *Id.* In other words, the Ninth Circuit would draw a distinction between the creation of a government program and its implementation. The trouble with this distinction is that it would permit Congress to create conditions on the use of funds which the Executive branch could not independently create. For example, it is black letter law that Congress can condition family-planning funds on the grantee agreeing not to facilitate abortion. *Rust*, 500 U.S. at 193–94. But under the Ninth Circuit's logic, if Congress appropriates funds for family planning generally but does not impose that condition, the Executive branch would then, as a matter of the First Amendment, seemingly be obligated award grant funds without considering whether they will be used for abortions or pro-abortion advocacy. The Executive branch could not, under the Ninth Circuit's logic, independently choose not to fund such projects. But nothing in *Rust* itself suggests this result, which speaks generally about the judgments the "government may make" without violating the Free Speech Clause. *Id.* at 192 (quotation omitted). Nor does any case that the court is aware of require this result. Moreover, plaintiffs have not advanced the Ninth Circuit's view in their briefs or at argument. The court therefore declines to address it further at this stage of the litigation, reserving final judgment on the issue for a later stage of litigation.

choose between ways of solving problems, precedent has made clear that the "refusal to fund protected activity, *without more*, cannot be equated with the imposition of a 'penalty' on that activity." *Rust*, 500 U.S. at 193 (quotation omitted) (emphasis added); *accord Camelot*, 24 F.4th at 646. The relevant question, then, is what constitutes "more."

Precedent has shed light on when the government transgresses its wide latitude. "[A] selective subsidy program may violate the First Amendment if it is 'aim[ed] at the suppression of dangerous ideas.'" *Camelot*, 24 F.4th at 646 (quoting *Regan v. Taxation With Representation*, 461 U.S. 540, 548 (1983)). Throughout the admittedly murky caselaw exploring the intersection of the First Amendment and funding decisions, a line of what it means to "aim at the suppression of dangerous ideas" emerges. That line is that the government may pick and choose to fund methods of solving problems that it agrees with, but it may not regulate a person's speech generally, including by punishing people for expressing or holding disfavored viewpoints. "[T]he relevant distinction," in other words, "is between conditions that define the limits of the government spending program—those that specify the activities" the government "wants to subsidize—and conditions that seek to leverage funding to regulate speech outside the contours of the program itself." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214–15 (2013). Thought of in a related but slightly different way, in its funding decisions the government can pick favored "project[s]" to fund but not favored "grantee[s]" to fund. *Rust*, 500 U.S. at 196.

An "easy example" illustrating this principle, the Seventh Circuit has explained, is that "even if Congress can choose to exclude political lobbyists entirely from [a] Program's subsidies, it could not choose to subsidize Democratic lobbyists while excluding Republicans." *Camelot*, 24 F.4th at 646. The former expresses a view on the use of government funds for lobbying, which the government may do. *See Regan*, 461 U.S. at 542. The latter, by contrast, is a condition on members of one party alone—no matter whether they are using grant funds in the exact same way as members of another party. Such a grantee-based condition is impermissible.

Other datapoints elucidate the line. Starting with impermissible conditions, take *Speiser v. Randall*, 357 U.S. 424 (1958). In that case, the Court made clear that the Government had "aimed at the suppression of dangerous ideas" in a problematic way when it conditioned tax exemptions on an organization's willingness to sign an anti-insurrection oath. *Id.* at 515, 519 (quotation omitted). Such a condition controlled what the grantee must say generally, as opposed to controlling the use of government funds, and was thus impermissible. Next take *Agency for International Development*. In that case, Congress appropriated "billions of dollars to fund efforts by nongovernmental organizations to assist in the fight" against HIV and AIDS. *Id.* at 208. But Congress imposed two conditions on the receipt of funds. One provided that "no [grant] funds" could "be used by an organization that d[id] not have a policy explicitly opposing prostitution and sex trafficking." *Id.* (quotation to statute omitted). That was an unconstitutional condition on funding, the Court explained,

because it "s[ought] to leverage funding to regulate speech outside the contours of the program itself." *Id.* at 214–15. Examples of permissible conditions further crystallize the line. Start with the other condition in *Agency for International Development*: Congress provided that "no [grant] funds" could "be used to promote or advocate the legalization or practice of prostitution or sex trafficking." *Id.* at 208 (quotation to statute omitted). That condition was not even challenged in the suit, but the Seventh Circuit has commented that it "posed no First Amendment problem." *Camelot*, 24 F.4th at 650. And *Camelot* itself provides another example. In that case the Seventh Circuit evaluated a condition on the receipt of COVID-19 relief funding. By statute, Congress excluded businesses that "[p]resent[ed] live performances of a prurient sexual nature" or that "[d]erive[d] . . . more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature." 24 F.4th at 645 (quotations to statute omitted). In that case, because the money would have gone to support a product or service the government did not want to subsidize, it was allowed to deny funding. *See id.* at 646.

Those examples, however, are all of explicit conditions. The court is cognizant of the fact that some conditions may be implicit. It thus stands to reason that if such a condition is being imposed implicitly in the selection of grant projects to fund, the government has transgressed its latitude and improperly "aim[ed] at the suppression of dangerous ideas." *Id.* at 646 (quoting *Regan*, 461 U.S. at 548). What the government cannot do overtly, it cannot do clandestinely.

In this case, then, the best read of all the existing precedent is that plaintiffs cannot succeed on Count VII or VIII merely by demonstrating that Education has declined to provide grant funding which can be used for DEI-related projects. Plaintiffs, in their briefing, have given the court no reason grounded in the Constitution[4] to think that Education is prohibited from adopting the view that funding such projects is not within its policy prerogatives and making grant decisions accordingly. Rather, precedent suggests that plaintiffs must prove something "more." That something "more" could come in two forms. Plaintiffs could show that explicit

[4] Plaintiffs, in their briefs and at argument, did not disagree with the court's interpretation of *Rust* and other cases in the selective-subsidy line and have not advanced an alternative theory about what those cases might mean. 6/8/2026 Hr'g Tr. at 157–58. Rather, when asked at argument why *Rust* did not defeat their First Amendment claims, plaintiffs responded in two ways. The first is that even if there was no First Amendment problem with Education's actions, their actions violated the APA's requirement to engage in notice and comment rulemaking. *See id.* That answer, however, is not grounded in the Constitution and, as the court has explained, is a disguised contract theory over which the court lacks jurisdiction. *See* [60] at 10–16. The second is that Education imposed unconstitutional limitations on funding in the non-continuation notices and reconsideration denials described above by making those decisions based on plaintiffs' views generally, as opposed to what they planned to use the grant funding for. 6/8/2026 Hr'g Tr. at 158. That factual claim is addressed, and rejected, below.

limits were placed on their ability to speak outside the context of the grant program, or that they were denied funding not because of what they would use grant funding for, but because Education disfavored their views more generally.[5]

Before turning to the facts of this case, the court notes one further legal consideration. In a limited set of cases the Supreme Court has said the government has less latitude to make content and viewpoint-based distinctions when it provides subsidies. Those cases involve factual scenarios where the government has created a program "designed to facilitate private speech" as opposed to a program which "promote[s] a governmental message." *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 542 (2001). In *Velazquez*, for example, the government had funded legal aid services to represent indigent clients in suits *against the government*. *See id.* It was obvious, then, that the funding was not being used to "deliver the government's message in the litigation." *Id.*

The most prominent example where the government's latitude to express a viewpoint via a grant funding decision was limited is *Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819 (1995). That case dealt with government (via a state university) funding for student publications where, as a condition of receiving funding to pay to print the publications, the government and clubs expressly agreed via contract that the government was not expressing its viewpoint via the clubs' publications. *Id.* at 823–25. As part of the program, the government had imposed a restriction on the use of funds: "religious activities," among others, were not reimbursable. *Id.* at 825. The petitioners in *Rosenberger* wanted to publish a paper called "Wide Awake: A Christian Perspective at the University of Virginia," but were denied funding to print it. *Id.* at 826–27. They sued, arguing that the government had imposed a problematic speech-based restriction on the use of funds. *Id.* at 827. The Court agreed, finding that because the government was funding explicitly private speech, it could not draw such a distinction. *Id.* at 834–35 ("Having offered to pay the third-party contractors on behalf of private speakers who convey their own messages, the [government] may not silence the expression of selected viewpoints.").

Most cases, however, are not like *Rosenberger* and *Velazquez*, which both dealt with the unique factual scenario of funding allocated to facilitate private speech. In *Finley*, for example, the Court seemed to narrow *Rosenberger*, suggesting that *Rosenberger*'s logic was driven by the fact that the government had "indiscriminately 'encourage[d] a diversity of views from private speakers.'" 524 U.S. at 586 (quoting *Rosenberger*, 515 U.S. at 834); *see also id.* (in cases where the government facilitates a "competitive process according to which . . . grants are allocated" to grantees, *Rosenberger* is "distinguish[ed]."). *Rosenberger* and *Velazquez*, then, appear to be the exception, not the rule. The general rule for funding cases appears to be that where

[5] The court does not conclude that this is an exhaustive list. But these are the types of actions precedent has condemned, and plaintiffs have not pointed to other impermissible actions.

the government selectively funds a grant, it is in some sense expressing its own views and can therefore adopt a viewpoint. As the *Velazquez* Court explained, the Court in "*Rust* did not place explicit reliance on the rationale that the" funded activities "amounted to governmental speech." 531 U.S. at 541. But "when interpreting the holding" of *Rust* "in later cases . . . we have explained *Rust* on this understanding." *Id.* In *Rust* and cases like it—where the government chooses to fund projects to tackle a problem—content and "viewpoint-based funding decisions can be sustained" because the "government is itself the speaker." *Id.*

Ultimately, as Education contends, the situation in this case resembles *Rust* and *Finley*, not *Rosenberger* and *Valezquez*, and involves government speech. 6/8/2026 Hr'g Tr. at 132–33. The government has chosen to solve a problem, a need for education programming, while at the same time choosing not to fund a particular type of education programming, programming that is DEI-focused. Plaintiffs have not shown that the grants at issue are "indiscriminately" awarded. *Finley*, 524 U.S. at 586. Rather, FSCS grants are awarded under a "competitive process." *Id.*; *see* [1] at 5. Furthermore, no facts suggest that Congress or Education have agreed that the programs being funded reflect only private views. *See Rosenberger*, 515 U.S. at 834–35. In fact, plaintiffs were clear at argument that they "do not purport to speak through their grant activities." 6/8/2026 Hr'g Tr. at 102. The rule governing this case, then, seems to be the general one: "the Government may allocate competitive funding according to criteria that would be impermissible were direct regulation of speech . . . at stake"—that is, by picking a viewpoint on how to solve problems and funding projects which accord with that viewpoint. *Finley*, 524 U.S. at 587–88; *see also Rust*, 500 U.S. at 193.

But again, none of that means Education's discretion was unlimited. As explained above, it still could not make funding decisions in a manner designed to suppress dangerous ideas. *See Camelot*, 24 F.4th at 646. Education was not permitted to place limits on what plaintiffs can say outside of the context of the grant program nor deny funding as a result of plaintiffs' speech outside of the context of the grant program. The court next turns to the factual issue of whether plaintiffs have established that they are likely to prove that Education did any of those things, concluding that they have not.

### *2. The facts*

Starting first with whether Education imposed any explicit unconstitutional conditions. Plaintiffs allege that Education illegally "condition[ed] continuation funding on whether [p]laintiffs' previously approved applications align with the current Administration's preferred viewpoints." [1] ¶ 112. What plaintiffs do not allege is that they were required to sign any statement disavowing DEI generally or even that they were required to forfeit the ability to conduct DEI-related projects using separate funding. In fact, plaintiffs have not pointed to any stated condition on what they could say at all. Rather, plaintiffs allege that their funds were conditioned

"on whether" their "previously approved [grant] applications align with the current Administration's preferred viewpoints." *Id.* But the grant applications, of course, were made within the context of, and for the precise purpose of, the grant program. They set out the projects plaintiffs proposed using the grant funding for, and in those applications plaintiffs noted that they could use grant funds for DEI-related projects. *See* [3-4] at 40, 63, 144. Plaintiffs confirmed exactly that at the oral argument. *See* 6/8/2026 Hr'g Tr. at 154–56.[6] It therefore is clear that plaintiffs have not identified any explicit unconstitutional condition. The government *is allowed* to condition grant funds on what the grantee will use the funds for. Just as the government is allowed to condition funds on whether funds will be used to promote the legalization of prostitution or human trafficking, *see Camelot*, 24 F.4th at 650, the government may condition funds on whether funds will be used to engage in DEI-related projects. In both scenarios, the government has taken a viewpoint on what activities it wants to fund and what activities it does not and has chosen to deny funding unless the grantee will not, under any circumstances, use the funds for that purpose.

Turning next to the possibility that Education imposed an implicit condition or otherwise targeted plaintiffs for their viewpoints. Plaintiffs allege that Education "relied on [their] expressive statements regarding its overarching values" to deny funding. [1] ¶ 104. At this stage, the court determines that plaintiffs have not established anything more than that they expressed certain values and that funding was denied. Plaintiffs have not persuasively established the requisite causal link between those two things needed to make success likely.

As explained previously, plaintiffs noted in their grant applications that they were ready and able to use grant funds for DEI-focused projects and they confirmed at the preliminary injunction hearing that they might provide such programming. *See* [3-4] at 40, 63, 144; 6/8/2026 Hr'g Tr. at 154–56. The use of grant funding for such purposes was Education's chief justification for discontinuing plaintiffs' funding: "applicant *has proposed project activities* that conflict with the Department's policy of prioritizing merit, fairness, and excellence in education." [3-7] at 2 (emphasis added). The court considers that strong evidence that Education was concerned plaintiffs would use government funds for projects that conflicted with Education's policies.

On the other side of the factual ledger, plaintiffs raise two points. Plaintiffs' first point is that they have not yet used any funds for DEI-related projects, and that they told Education exactly that when they challenged their notices of non-continuation. At the June 8, 2026, hearing, plaintiffs presented several

---

[6] THE COURT: "Is that language from the grant applications . . . saying" you could "use funds for DEI programming?"

COUNSEL FOR PLAINTIFFS: "[I]f that community determined that those kinds of programs were necessary . . . then they may be able to do that."

uncontroverted witnesses who testified that they have not used funds for such activities. *See, e.g.*, 6/8/2026 Hr'g Tr. at 20. The record contains nothing to cast doubt on the veracity of that claim.

But that plaintiffs have not *yet* used funds for DEI-related projects is no rejoinder. Grant funding is limited. When picking among potential grantees, the government is permitted to make categorical judgments—it may define the "contours" of a grant program by choosing what sorts of activities to fund. *Camelot*, 24 F.4th at 650 (quotation omitted). For example, as explained above, the government may categorically exclude the use of grant funds to promote prostitution or sex trafficking. *See Agency for Int'l Dev.*, 570 U.S. at 208. Or, under *Rust*, it may fund "family planning" services but decline to fund abortion or abortion advocacy. *See Rust*, 500 U.S. at 179, 192–93. Such categorical judgments on the use of funds are not problematic.

Here the government has made a similar categorical judgment: a potential grantee who says it might use grant funds for DEI-related projects should not receive grant funds at the expense of other grantees.[7] That is just another way of defining the "contours" of a grant program. *Camelot*, 24 F.4th at 650 (quotation omitted). And Education's categorical judgment makes sense. Plaintiffs have not said one way or another whether they will stay within Education's contours. *See* [3-4] at 40, 63, 144; 6/8/2026 Hr'g Tr. at 154–56. When they applied for their initial grants and when they applied for continuation funding, then, plaintiffs left Education in a state of uncertainty about the use of grant funds. But nothing in law or logic suggests Education must take a bet that plaintiffs will, on their own volition, stay within the lines on funding use Education wishes to draw. That would be an odd bet to force, as it would require Education to constantly monitor its grantees to see if its grant funds are, in fact, being used for purposes it does not approve of. Such a reactive system is entirely contrary to the notion of defining the contours of a program in the first place.

Plaintiffs' second point is that Education "cited [p]laintiffs' statements expressing its values and mission as evidence that continuation funding was not in the best interest of the Federal Government." [48] at 27 (quotation omitted). Even assuming that this is some evidence that the *grantees' views generally* were considered as opposed to the *projects the grantees proposed*, at best that evidence is quite weak or, at worst (and in conjunction with other evidence) cuts the other way. To start, that evidence must be weighed against the other pieces of the grant application that Education cited; specifically, plaintiffs' statements that they can and do provide DEI-related programming and that they were ready and able to use grant funding to do so. It is thus hard to know with any certainty whether Education was motivated by those statements or by plaintiffs' mission statement. But also, plaintiffs'

[7] The parties did not put evidence into the record about what projects the government did fund.

mission statement, in conjunction with their stated capabilities, suggests that they are likely to at some point utilize funds for purposes inconsistent with Education's policies. Take an example. If a family-planning organization says "abortion as a method of family planning is intentionally integrated into all that" it does, and then that organization applies for grant funds and vaguely says that it will use the funds to provide family-planning resources, it does not stretch the imagination that the organization might, at some point, use grant funds to promote or facilitate abortions. The same is true in this case. Plaintiffs made open-ended project proposals, said that they can facilitate DEI-related projects, and then also said that "[e]quity is intentionally and sustainably integrated into all that [ACT Now] do[es]." [3-4] at 144. In conjunction, those capabilities and the stated mission suggest a genuine risk that plaintiffs will at some point use funds for DEI-related projects. Or, at the very least, Education would not be unreasonable in concluding that there is such a genuine risk and making a decision based on that conclusion. The court is thus not convinced that plaintiffs are likely to prove that the real motivation behind Education's funding decisions was the value statement—at this stage, it is more likely that Education simply did not want to accept the risk that grant funds would be used on projects that are not in line with the current Administration's funding priorities.

* * *

Plaintiffs face an uphill climb. Case after case suggests that the government has "wide latitude" to make funding decisions and that nothing in the Constitution prohibits Education from tackling problems in the way it sees fit. *Finley*, 524 U.S. at 588. That means plaintiffs are unlikely to prove that Education could not categorically decline to fund DEI-related programming. To that end, if a potential grantee says that it is ready and able to use grant funds for DEI-related projects if the need arises, precedent strongly suggests that the Government may decline to fund that grant project. There are limits to funding decisions, however. What Education cannot do is place an explicit or implicit condition on funding which regulates what grantees can say generally or punish grantees for their general viewpoints. Plaintiffs have not pointed to any such explicit condition, and the evidence plaintiffs have proffered of an implicit condition is quite weak and is outweighed by contrary evidence. Thus, the court finds plaintiffs are unlikely to succeed on the merits of either Count VII or Count VIII. Although plaintiffs are likely to establish that the court has jurisdiction over those counts, jurisdiction is debatable and they are nevertheless unlikely to ultimately prevail in this suit. Plaintiffs' motion for a preliminary injunction [46] is accordingly denied.

Dated: June 26, 2026 /s/ Martha M. Pacold

APPEAL,WEISMAN

**United States District Court**
**Northern District of Illinois - CM/ECF NextGen 1.9 (rev. 1.9) (Chicago)**
**CIVIL DOCKET FOR CASE #: 1:25-cv-15704**
**Internal Use Only**

Afterschool for Children and Teens (ACT) Now et al v. United States Department Of Education et al
Assigned to: Honorable Martha M. Pacold
Cause: 05:702 Administrative Procedure Act

Date Filed: 12/29/2025
Jury Demand: None
Nature of Suit: 899 Other Statutes: Administrative Procedures Act/Review or Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Afterschool for Children and Teens (ACT) Now**

represented by

**Jocelyn Eskow Skinner**
Sligo Law Group, PLLC
1717 K St. NW
Suite 900
Washington, DC 20006
(202) 888-2084
Fax: Pro Hac Vice
Email: josie@sligolawgroup.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott C. Solberg**
Eimer Stahl LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604-2516
(312) 660-7600
Fax: Active
Email: ssolberg@eimerstahl.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alec J. Solotorovsky**
Eimer Stahl LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
Fax: Active
Email: asolotorovsky@eimerstahl.com
*ATTORNEY TO BE NOTICED*

**Beatriz Adriana Diaz-Pollack**
Chicago Lawyers' Committee For Civil Rights
100 N. Lasalle St.
Suite 600

Chicago, IL 60602
(312) 630-9744
Fax: Not a member
Email: bdiaz-pollack@clccrul.org
*ATTORNEY TO BE NOTICED*

**Elizabeth Mary Hady**
Eimer Stahl
224 S. Michigan Ave.
Suite 1100
Chicago, IL 60604
312-660-7654
Email: ehady@eimerstahl.com
*ATTORNEY TO BE NOTICED*

**Emily Kiyoko Merolli**
Sligo Law Group, PLLC
1717 K Street, NW, Ste. 900
Washington, DC 20006
(202) 266-5607
Fax: Pro Hac Vice
Email: emily@sligolawgroup.com
*ATTORNEY TO BE NOTICED*

**Michael R. Ortega**
Chicago Lawyers' Committee
25 E. Washington Ave. Ste. 1300
Ste 1300
Chicago, IL 60602
312-202-3648
Email: mortega@clccrul.org
*ATTORNEY TO BE NOTICED*

**Aneel Lachman Chablani**
Chicago Lawyers' Committee for Civil Rights
25 East Washinton Street
Ste. 1300
Chicago, IL 60602
312-202-3658
Email: achablani@clccrul.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Metropolitan Family Services** represented by

**Scott C. Solberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alec J. Solotorovsky**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Aneel Lachman Chablani**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Beatriz Adriana Diaz-Pollack**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Mary Hady**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Kiyoko Merolli**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael R. Ortega**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**United States Department Of Education** represented by **AUSA - Chicago**
United States Attorney's Office (NDIL - Chicago)
219 South Dearborn Street
Chicago, IL 60604
Fax: US Govt Attorney
Email: USAILN.ECFAUSA@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Patrick Walter Johnson**
United States Attorney's Office (NDIL - Chicago)
219 South Dearborn Street
Chicago, IL 60604
(312) 353-5300
Fax: Active
Email: patrick.johnson2@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Thomas Cull**
DOJ-USAO
219 S. Dearborn St.
Suite 900
Chicago, IL 60604
312-886-4190
Email: thomas.cull@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Linda McMahon** represented by **AUSA - Chicago**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Patrick Walter Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Cull**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/29/2025 | 1 | COMPLAINT filed by Afterschool for Children and Teens (ACT) Now; Filing fee $ 405, receipt number AILNDC-24522449. (Attachments: # 1 Civil Cover Sheet, # 2 Civil Cover Sheet)(Chablani, Aneel) (Entered: 12/29/2025) |
| 12/29/2025 | 2 | ATTORNEY Appearance for Plaintiffs Afterschool for Children and Teens (ACT) Now, Metropolitan Family Services by Aneel Lachman Chablani (Chablani, Aneel) (Entered: 12/29/2025) |
| 12/29/2025 | 3 | Complaint Exhibits by Afterschool for Children and Teens (ACT) Now (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Declaration Merolli)(Chablani, Aneel) (Entered: 12/29/2025) |
| 12/29/2025 | 4 | ATTORNEY Appearance for Plaintiffs Afterschool for Children and Teens (ACT) Now, Metropolitan Family Services by Beatriz Adriana Diaz-Pollack (Diaz-Pollack, Beatriz) (Entered: 12/29/2025) |
| 12/29/2025 | 5 | MOTION by Plaintiff Afterschool for Children and Teens (ACT) Now for temporary restraining order<br><br>(Attachments: # 1 Text of Proposed Order)(Chablani, Aneel) (Entered: 12/29/2025) |
| 12/29/2025 | 6 | MOTION by Plaintiff Afterschool for Children and Teens (ACT) Now for temporary restraining order *Memorandum in Support of Motion*<br><br>(Attachments: # 1 Appendix, # 2 Declaration Merolli, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit)(Chablani, Aneel) (Entered: 12/29/2025) |
| 12/29/2025 | 7 | CERTIFICATE of Service *of Motion for Temporary Restraining Order* by Aneel Lachman Chablani on behalf of All Plaintiffs regarding MOTION by Plaintiff Afterschool for Children and Teens (ACT) Now for temporary restraining order<br><br>5 (Chablani, Aneel) (Entered: 12/29/2025) |
| 12/30/2025 | 8 | MOTION for Leave to Appear Pro Hac Vice on behalf of Afterschool for Children and Teens (ACT) Now, Metropolitan Family Services by Emily Kiyoko Merolli; Filing fee $ 150, receipt number AILNDC-24524491.<br><br>(Attachments: # 1 Affidavit)(Merolli, Emily) (Entered: 12/30/2025) |
| 12/30/2025 | 9 | MOTION for Leave to Appear Pro Hac Vice on behalf of Afterschool for Children and Teens (ACT) Now by Jocelyn Eskow Skinner; Filing fee $ 150, receipt number AILNDC-24524552. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Supplement)(Skinner, Jocelyn) (Entered: 12/30/2025) |
| 12/30/2025 | | CASE ASSIGNED to the Honorable Thomas M. Durkin. Designated as Magistrate Judge the Honorable M. David Weisman. Case assignment: Random assignment. (Civil Category 2). (lj, ) (Entered: 12/30/2025) |
| 12/30/2025 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings, all parties must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (lj, ) (Entered: 12/30/2025) |
| 12/30/2025 | 10 | MINUTE entry before the Honorable Thomas M. Durkin: Motions to appear pro hac vice 8 9 are granted. Mailed notice. (ecw, ) (Entered: 12/30/2025) |
| 12/30/2025 | 11 | MINUTE entry before the Honorable Martha M. Pacold: This order is entered by Judge Pacold as Emergency Judge. Telephone emergency motion hearing on plaintiff's motion for temporary restraining order, 5 , set for 12/31/2025 at 9:30 a.m. To join the telephone hearing please dial 650-479-3207 and enter access code 2310 276 7442#. Press # when prompted for an attendee number. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (lxk, ) (Entered: 12/30/2025) |
| 12/30/2025 | 12 | DESIGNATION of Patrick Walter Johnson as U.S. Attorney for Defendants Linda McMahon, United States Department Of Education (Johnson, Patrick) (Entered: 12/30/2025) |
| 12/31/2025 | 13 | MINUTE entry before the Honorable Martha M. Pacold: This order is entered by Judge Pacold as Emergency Judge. Telephone emergency motion hearing held on 12/31/2025. Plaintiffs' motion for temporary restraining order, 5 , is denied for the reasons stated on the record. Telephone status hearing set for 1/6/2026 at 11:30 a.m. To join the telephone hearing please dial 650-479-3207 and enter access code 2310 276 7442#. Press # when prompted for an attendee number. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (lxk, ) (Entered: 12/31/2025) |
| 12/31/2025 | 14 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must |

| | | |
|---|---|---|
| | | supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Honorable Virginia M. Kendall on 12/31/2025: Mailed notice. (tg, ) (Entered: 01/02/2026) |
| 12/31/2025 | 15 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Honorable Virginia M. Kendall on 12/31/2025: Mailed notice. (tg, ) (Entered: 01/05/2026) |
| 01/06/2026 | 16 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by All Plaintiffs (Chablani, Aneel) (Entered: 01/06/2026) |
| 01/06/2026 | 19 | SUMMONS Issued (Court Participant) as to Linda McMahon and United States Department Of Education (Attachments: # 1 summons)(axk, ) (Entered: 01/06/2026) |
| 01/06/2026 | 20 | MINUTE entry before the Honorable Martha M. Pacold: Telephone status hearing held on 1/6/2026 and continued to 1/27/2026 at 9:20 a.m. To join the telephone hearing please dial 650-479-3207 and enter access code 2310 276 7442#. Press # when prompted for an attendee number. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (lxk, ) (Entered: 01/06/2026) |
| 01/06/2026 | 21 | MINUTE entry before the Executive Committee: Case reassigned to the Honorable Martha M. Pacold for all further proceedings pursuant to Rule 13 of the Internal Operating Procedures of this Court (Like Kind Agreement IOP13). Mailed notice (Attachments: # 1 Request for Reassignment) (lj, ) (Entered: 01/07/2026) |
| 01/27/2026 | 22 | MINUTE entry before the Honorable Martha M. Pacold: Telephone status hearing held on 1/27/2026. The parties report ongoing negotiations. Telephone status hearing is continued to 2/10/2026 at 9:40 a.m. To join the telephone hearing please dial 650-479-3207 and enter access code 2310 276 7442#. Press # when prompted for an attendee number. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial |

| | | |
|---|---|---|
| | | of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (lxk, ) (Entered: 01/27/2026) |
| 02/10/2026 | 23 | MINUTE entry before the Honorable Martha M. Pacold: Telephone status hearing held on 2/10/2026. The parties report ongoing negotiations. Telephone status hearing is continued to 2/17/2026 at 9:20 a.m. To join the telephone hearing please dial 650-479-3207 and enter access code 2310 276 7442#. Press # when prompted for an attendee number. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (lxk, ) (Entered: 02/10/2026) |
| 02/17/2026 | 24 | MINUTE entry before the Honorable Martha M. Pacold: Telephone status hearing held on 2/17/2026. The parties report ongoing negotiations. Telephone status hearing is continued to 2/24/2026 at 9:30 a.m. To join the telephone hearing please dial 650-479-3207 and enter access code 2310 276 7442#. Press # when prompted for an attendee number. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (lxk, ) (Entered: 02/17/2026) |
| 02/24/2026 | 25 | MINUTE entry before the Honorable Martha M. Pacold: Telephone status hearing held on 2/24/2026. The parties report ongoing negotiations. Telephone status hearing is continued to 3/5/2026 at 9:40 a.m. To join the telephone hearing please dial 650-479-3207 and enter access code 2310 276 7442#. Press # when prompted for an attendee number. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (lxk, ) (Entered: 02/24/2026) |
| 03/05/2026 | 26 | MINUTE entry before the Honorable Martha M. Pacold: Telephone status hearing held on 3/5/2026. The parties report that they have reached an interim resolution through the end of the school year. Defendants' motion to dismiss to be filed by 3/16/2026. Plaintiffs shall file their response no later than 3/26/2026. Defendants shall file their reply no later than 3/31/2026. Oral argument set for 4/13/2026 at 11:00 a.m. in Courtroom 2325. Each party will be given 30 minutes to argue the motion. Mailed notice. (lxk, ) (Entered: 03/05/2026) |
| 03/16/2026 | 27 | DESIGNATION of Thomas Cull as U.S. Attorney for Defendants Linda McMahon, United States Department Of Education (Cull, Thomas) (Entered: 03/16/2026) |
| 03/16/2026 | 28 | MOTION by Defendants Linda McMahon, United States Department Of Education to dismiss for lack of jurisdiction<br><br>(Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B)(Cull, Thomas) (Entered: 03/16/2026) |
| 03/25/2026 | 29 | ATTORNEY Appearance for Plaintiffs Afterschool for Children and Teens (ACT) Now, Metropolitan Family Services by Michael R. Ortega (Ortega, Michael) (Entered: 03/25/2026) |

| | | |
|---|---|---|
| 03/26/2026 | 30 | RESPONSE by Afterschool for Children and Teens (ACT) Now, Metropolitan Family Servicesin Opposition to MOTION by Defendants Linda McMahon, United States Department Of Education to dismiss for lack of jurisdiction<br><br>28 (Ortega, Michael) (Entered: 03/26/2026) |
| 03/31/2026 | 31 | RESPONSE by Linda McMahon, United States Department Of Educationin Support of MOTION by Defendants Linda McMahon, United States Department Of Education to dismiss for lack of jurisdiction<br><br>28 (Cull, Thomas) (Entered: 03/31/2026) |
| 04/01/2026 | 32 | SUPPLEMENT to response in opposition to motion, 30 *Notice of Supplemental Authority* (Ortega, Michael) (Entered: 04/01/2026) |
| 04/01/2026 | 33 | EXHIBIT by Plaintiffs Afterschool for Children and Teens (ACT) Now, Metropolitan Family Services regarding supplement 32 (Ortega, Michael) (Entered: 04/01/2026) |
| 04/09/2026 | 34 | SUPPLEMENT to response in opposition to motion, 30 *Notice of Supplemental Authority* (Attachments: # 1 Exhibit)(Skinner, Jocelyn) (Entered: 04/09/2026) |
| 04/13/2026 | 35 | MINUTE entry before the Honorable Martha M. Pacold: Oral argument held on 4/13/2026. Defendants' motion to dismiss, 28 , is taken under advisement. The Court either will issue a ruling or set a ruling from the bench. Telephone status set for 4/20/2026 at 9:00 a.m. To join the telephone hearing please dial 650-479-3207 and enter access code 2310 276 7442#. Press # when prompted for an attendee number. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (lxk, ) (Entered: 04/13/2026) |
| 04/15/2026 | 36 | TRANSCRIPT OF PROCEEDINGS held on 4/13/26 before the Honorable Martha M. Pacold. Order Number: 55127. Court Reporter Contact Information: Kathleen_Fennell@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 5/6/2026. Redacted Transcript Deadline set for 5/18/2026. Release of Transcript Restriction set for 7/14/2026. (Fennell, Kathleen) (Entered: 04/15/2026) |
| 04/16/2026 | 37 | MOTION by Plaintiffs Afterschool for Children and Teens (ACT) Now, Metropolitan Family Services for leave to file *Supplemental Memorandum (Unopposed)*<br><br>(Attachments: # 1 Supplemental Memorandum)(Ortega, Michael) (Entered: 04/16/2026) |

| | | |
|---|---|---|
| 04/17/2026 | 38 | MINUTE entry before the Honorable Martha M. Pacold: At Monday's status hearing, plaintiffs should be prepared to discuss which of their requested remedies, labeled A-G on pages 25 and 26 of their complaint, are associated with each of the Counts (I-VIII) they allege. *I.e.*, is Count I associated with each remedy or just a subset. Mailed notice. (lxk, ) (Entered: 04/17/2026) |
| 04/19/2026 | 39 | Defendants' Response to ACT Now's Supplemental Memorandum by Linda McMahon, United States Department Of Education (Cull, Thomas) (Entered: 04/19/2026) |
| 04/20/2026 | 40 | MINUTE entry before the Honorable Martha M. Pacold: Plaintiffs' unopposed motion for leave to file supplemental memorandum, 37 , is granted. Plaintiffs are directed to file the supplemental memorandum as a separate docket entry. Mailed notice. (lxk, ) (Entered: 04/20/2026) |
| 04/20/2026 | 41 | MINUTE entry before the Honorable Martha M. Pacold: Telephone status hearing held on 4/20/2026. Defendants' motion to dismiss, 28 , remains under advisement. Telephone status set for 4/23/2026 at 9:00 a.m. To join the telephone hearing please dial 650-479-3207 and enter access code 2310 276 7442#. Press # when prompted for an attendee number. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (lxk, ) (Entered: 04/20/2026) |
| 04/23/2026 | 42 | MINUTE entry before the Honorable Martha M. Pacold: Telephone status hearing held on 4/23/2026. Defendants' motion to dismiss, 28 , remains under advisement. Plaintiffs report they intend to file a preliminary injunction motion by 4/30/2026. Defendants to reply by 5/21/2026. Plaintiffs' response due by 6/1/2026. Counsel are directed to confer on availability and timing and reach out to the courtroom deputy to schedule a preliminary injunction hearing. Mailed notice. (lxk, ) (Entered: 04/23/2026) |
| 04/30/2026 | 43 | ATTORNEY Appearance for Plaintiffs Afterschool for Children and Teens (ACT) Now, Metropolitan Family Services by Scott C. Solberg (Solberg, Scott) (Entered: 04/30/2026) |
| 04/30/2026 | 44 | ATTORNEY Appearance for Plaintiffs Afterschool for Children and Teens (ACT) Now, Metropolitan Family Services by Alec J. Solotorovsky (Solotorovsky, Alec) (Entered: 04/30/2026) |
| 04/30/2026 | 45 | ATTORNEY Appearance for Plaintiffs Afterschool for Children and Teens (ACT) Now, Metropolitan Family Services by Elizabeth Mary Hady (Hady, Elizabeth) (Entered: 04/30/2026) |
| 04/30/2026 | 46 | MOTION by Plaintiffs Afterschool for Children and Teens (ACT) Now, Metropolitan Family Services for preliminary injunction<br><br>(Solberg, Scott) (Entered: 04/30/2026) |
| 04/30/2026 | 47 | MOTION by Plaintiffs Afterschool for Children and Teens (ACT) Now, Metropolitan Family Services for leave to file excess pages<br><br>(Solberg, Scott) (Entered: 04/30/2026) |
| 04/30/2026 | 48 | MEMORANDUM by Afterschool for Children and Teens (ACT) Now, Metropolitan Family Services in support of motion for preliminary injunction 46 |

| | | |
|---|---|---|
| | | (Solberg, Scott) (Entered: 04/30/2026) |
| 04/30/2026 | 49 | Exhibit List *Exhibit List for Memorandum in Support of Motion for Preliminary Injunction* by Afterschool for Children and Teens (ACT) Now, Metropolitan Family Services. (Attachments: # 1 Declaration Stanton Decl., # 2 Declaration Rivers Decl., # 3 Declaration Long Decl., # 4 Declaration Guilmette Decl., # 5 Declaration Williams Decl., # 6 Declaration Hosfeldt Decl., # 7 Declaration Davis Decl., # 8 Declaration Rea Decl., # 9 Declaration Lovel Decl., # 10 Declaration Jennings Decl., # 11 Declaration Pietrantoni Decl., # 12 Declaration Neal Decl., # 13 Declaration Edgar Decl., # 14 Declaration Lamboley Decl., # 15 Declaration Vogt Decl., # 16 Declaration Clodi Decl., # 17 Declaration Stigge-Kaufman Decl., # 18 Declaration Mateyka Decl., # 19 Declaration O'Connell Decl., # 20 Declaration David Decl., # 21 Declaration Kinsey Decl., # 22 Exhibit Department Guidance, # 23 Declaration Merolli Decl., # 24 Exhibit Hartford Notice, # 25 Exhibit Hartford Denial, # 26 Exhibit El Centro Notice, # 27 Exhibit El Centro Denial, # 28 Exhibit Paterson Notice 1, # 29 Exhibit Paterson Denial 1, # 30 Exhibit Paterson Notice 2, # 31 Exhibit Paterson Denial 2, # 32 Exhibit Prichard Notice, # 33 Exhibit Prichard Denial, # 34 Exhibit Sodus Notice, # 35 Exhibit Sodus Denial, # 36 Exhibit DCPS Notice 1, # 37 Exhibit DCPS Denial 1, # 38 Exhibit DCPS Notice 2, # 39 Exhibit DCPS Denial 2, # 40 Exhibit Duke Notice, # 41 Exhibit Duke Denial, # 42 Exhibit UMD Baltimore Notice, # 43 Exhibit UMD Baltimore Denial, # 44 Exhibit Waco Notice, # 45 Exhibit Waco Denial)(Merolli, Emily) (Entered: 04/30/2026) |
| 05/04/2026 | 50 | MINUTE entry before the Honorable Martha M. Pacold: Preliminary injunction hearing on plaintiff's motion 46 scheduled for 6/8/26 at 9:00 a.m. in Courtroom 2325. Plaintiffs' unopposed motion for leave to file brief in excess of fifteen pages, 47 , is granted. Mailed notice. (exr, ) (Entered: 05/04/2026) |
| 05/21/2026 | 51 | RESPONSE by Linda McMahon, United States Department Of Educationin Opposition to MOTION by Plaintiffs Afterschool for Children and Teens (ACT) Now, Metropolitan Family Services for preliminary injunction<br><br>46 (Cull, Thomas) (Entered: 05/21/2026) |
| 06/01/2026 | 52 | REPLY by Plaintiffs Afterschool for Children and Teens (ACT) Now, Metropolitan Family Services to motion for preliminary injunction 46 (Solberg, Scott) (Entered: 06/01/2026) |
| 06/05/2026 | 53 | MINUTE entry before the Honorable Martha M. Pacold: The 6/8/2026 preliminary injunction hearing on plaintiff's motion 46 scheduled for 9:00 a.m. is stricken and reset for 10:00 a.m. in Courtroom 2325. TIME CHANGE ONLY. Mailed notice. (lxk, ) (Entered: 06/05/2026) |
| 06/08/2026 | 54 | MINUTE entry before the Honorable Martha M. Pacold: Preliminary injunction hearing held on 6/8/2026. Plaintiffs' motion for preliminary injunction, 46 , is taken under advisement. The Court either will issue a ruling or set a ruling from the bench. Telephone status hearing set for 6/10/2026 at 1:30 p.m. To join the telephone hearing please dial 650-479-3207 and enter access code 2310 276 7442#. Press # when prompted for an attendee number. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (lxk, ) (Entered: 06/09/2026) |

| | | |
|---|---|---|
| 06/10/2026 | 55 | MINUTE entry before the Honorable Martha M. Pacold: Telephone status hearing held on 6/10/2026. The pending motions 28 , 46 remain under advisement. Mailed notice. (lxk, ) (Entered: 06/10/2026) |
| 06/12/2026 | 56 | SUPPLEMENT to *Plaintiffs' Response to Defendants' Motion to Dismiss* (Attachments: # 1 Exhibit Supplemental Authority)(Merolli, Emily) (Entered: 06/12/2026) |
| 06/22/2026 | 57 | RESPONSE by Defendants Linda McMahon, United States Department Of Education to supplement 56 *Defendants' Response to Supplemental Authority* (Cull, Thomas) (Entered: 06/22/2026) |
| 06/23/2026 | 58 | TRANSCRIPT OF PROCEEDINGS held on 6/8/26 before the Honorable Martha M. Pacold. Order Number: 57196,57198. Court Reporter Contact Information: Kathleen_Fennell@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 7/14/2026. Redacted Transcript Deadline set for 7/24/2026. Release of Transcript Restriction set for 9/21/2026. (Fennell, Kathleen) (Entered: 06/23/2026) |
| 06/26/2026 | 59 | MINUTE entry before the Honorable Martha M. Pacold: For the reasons in the attached order, defendants' motion to dismiss 28 for want of jurisdiction is granted as to Counts I-VI and continued as to Counts VII-VIII. Mailed notice. (lxk, ) (Entered: 06/26/2026) |
| 06/26/2026 | 60 | MEMORANDUM Opinion and Order. Signed by the Honorable Martha M. Pacold on 6/26/2026. Mailed notice. (lxk, ) (Entered: 06/26/2026) |
| 06/26/2026 | 61 | MINUTE entry before the Honorable Martha M. Pacold: For the reasons in the attached order, plaintiffs' motion 46 for a preliminary injunction is denied. Mailed notice. (lxk, ) (Entered: 06/26/2026) |
| 06/26/2026 | 62 | MEMORANDUM Opinion and Order. Signed by the Honorable Martha M. Pacold on 6/26/2026. Mailed notice. (lxk, ) (Entered: 06/26/2026) |
| 06/26/2026 | 63 | MINUTE entry before the Honorable Martha M. Pacold: By 7/8/2026, the parties shall file a status report on next steps in the litigation. If the parties would like more time or to hold a status hearing, they should notify the court. Mailed notice. (lxk, ) (Entered: 06/26/2026) |
| 07/07/2026 | 64 | TRANSCRIPT OF PROCEEDINGS held on 12/31/25 before the Honorable Martha M. Pacold. Order Number: 57423. Court Reporter Contact Information: Kathleen_Fennell@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. |

| | | |
|---|---|---|
| | | Redaction Request due 7/28/2026. Redacted Transcript Deadline set for 8/7/2026. Release of Transcript Restriction set for 10/5/2026. (Fennell, Kathleen) (Entered: 07/07/2026) |
| 07/07/2026 | 65 | MINUTE entry before the Honorable Martha M. Pacold: At the request of counsel, the 7/8/2026 status report deadline is stricken and reset to 7/15/2026. Mailed notice. (lxk, ) (Entered: 07/07/2026) |
| 07/13/2026 | 66 | NOTICE of appeal by Afterschool for Children and Teens (ACT) Now, Metropolitan Family Services regarding orders 62 Filing fee $ 605, receipt number AILNDC-25370492. Receipt number: n (Solberg, Scott) (Entered: 07/13/2026) |
| 07/14/2026 | 67 | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal 66 (emc, ) (Entered: 07/14/2026) |