**No. 26-2473**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

AFTERSCHOOL FOR CHILDREN AND TEENS NOW (ACT NOW) COALITION and METROPOLITAN FAMILY SERVICES,

Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF EDUCATION and LINDA MCMAHON, in her official capacity as Secretary, U.S. Department of Education,

Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of Illinois, No. 25-15704 (Martha M. Pacold, J.)

# BRIEF FOR APPELLEES


BRETT A. SHUMATE
*Assistant Attorney General*

ANDREW S. BOUTROS
*United States Attorney*

DANIEL TENNY
LEWIS S. YELIN
*Attorneys, Appellate Staff*
*Civil Division, Room 7239*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3425*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....... ii

INTRODUCTION ....... 1

STATEMENT OF JURISDICTION ....... 2

STATEMENT OF THE ISSUES ....... 3

STATEMENT OF THE CASE ....... 3

A. Statutory and Regulatory Background ....... 3

B. Factual Background ....... 5

C. Prior Proceedings ....... 7

SUMMARY OF ARGUMENT ....... 13

STANDARD OF REVIEW ....... 15

ARGUMENT ....... 16

I. The District Court Correctly Determined That Plaintiffs Are Unlikely to Succeed on Their First Amendment Claims ....... 16

A. The Department's Action Was a Permissible Selective-Funding Decision ....... 16

B. Plaintiffs' Contrary Arguments Lack Merit ....... 19

II. Having Concluded That Plaintiffs Are Unlikely to Succeed, the District Court Was Not Required to Balance the Equities, Which Do Not Support Plaintiffs in Any Event ....... 28

CONCLUSION ....... 31

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
570 U.S. 205 (2013) .......... 9, 10, 12

*Anderson v. City of Bessemer City*,
470 U.S. 564 (1985) .......... 15, 23

*Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*,
24 F.4th 640 (7th Cir. 2022) .......... 17

*Grubhub Inc. v. Relish Labs LLC*,
80 F.4th 835 (7th Cir. 2023) .......... 30

*Henry v. Hulett*,
969 F.3d 769 (7th Cir. 2020) .......... 19

*Illinois Republican Party v. Pritzker*,
973 F.3d 760 (7th Cir. 2020) .......... 8, 30

*Illinois Tamale Co. v. LC Trademarks, Inc.*,
164 F.4th 648 (7th Cir. 2026) .......... 29, 30

*Mays v. Dart*,
974 F.3d 810 (7th Cir. 2020) .......... 29

*Minocqua Brewing Co. v. Hess*,
160 F.4th 849 (7th Cir. 2025) .......... 15, 23

*National Endowment for the Arts v. Finley*,
524 U.S. 569 (1998) .......... 9, 17, 21

*Reliable Money Ord., Inc. v. McKnight Sales Co.*,
704 F.3d 489 (7th Cir. 2013) .......... 23, 24, 25, 27

*Rust v. Sullivan*,
500 U.S. 173 (1991) .......... 9, 16, 20, 21

*Thakur v. Trump*,
176 F.4th 1187 (9th Cir. 2026) .......... 22

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 29

**Statutes**

20 U.S.C. §§ 7271-7275 .......... 3
§ 7271(1) .......... 3

28 U.S.C. § 1292(a)(1) .......... 2

28 U.S.C. § 1331 .......... 2

Every Student Succeeds Act,
Pub. L. No. 114-95, 129 Stat 1802 (2015) .......... 3

**Rules**

Fed. R. App. P. 4(a)(1)(B) .......... 2

**Regulations**

34 C.F.R. § 75.251(a) .......... 4, 5, 6

34 C.F.R. § 75.253(a) .......... 4

(1)(i)(A) .......... 4

(2)-(4) .......... 4

(5) .......... 4, 18

**Other Authorities**

Daniel J. Hemel, *Executive Action and the First Amendment's First Word*, 40 Pepp. L. Rev. 601 (2013) .......... 19-20

## INTRODUCTION

Plaintiffs in this case obtained a grant from the Department of Education (Department) during the prior Administration based on an application that, in part, highlighted their ability to further the prior Administration's policy priorities. The current Administration has different priorities and chose not to continue funding plaintiffs' grants. Plaintiffs may dislike the change in government policy, but as the district court explained, the government may choose what programs it funds, and declining to fund programs contrary to the government's policy is not a First Amendment violation. The court also made the factual determination that the Department chose not to continue plaintiffs' funding because of its concern about how plaintiffs might use the funds rather than because it disapproved of plaintiffs' views unconnected to the grant program. Because the court correctly identified the applicable law and made no clear error in its factfinding, this Court should affirm the district court's denial of plaintiffs' request for preliminary relief.

## STATEMENT OF JURISDICTION

Plaintiffs' jurisdictional statement is incomplete. Plaintiffs' complaint made claims under the Administrative Procedure Act and the Constitution, and plaintiffs asserted jurisdiction in the district court under the federal-question statute, 28 U.S.C. § 1331. The district court held that it lacked jurisdiction over six of the eight counts of the complaint and expressed concern about its jurisdiction over the counts at issue here although it ultimately denied a preliminary injunction on the merits. *See* Dkt. 60, at 5-21 (motion-to-dismiss order) (holding that the court lacked jurisdiction over Counts I-VI of the complaint); *id.* at 21-28 (holding that the court likely has jurisdiction over Counts VII-VIII of the complaint but expressing significant doubt). The district court denied plaintiffs' motion for a preliminary injunction on June 26, 2026. Required Short App. (RSA) A-15. Plaintiffs filed a timely notice of appeal from that order on July 13, 2026. Dkt. 66. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1). *See* Fed. R. App. P. 4(a)(1)(B).

## STATEMENT OF THE ISSUES

1. Whether the district court correctly denied plaintiffs' motion for a preliminary injunction because plaintiffs are unlikely to succeed on their First Amendment claims;

2. Whether, having concluded that plaintiffs are unlikely to succeed on their First Amendment claims, the district court was required to evaluate the injuries plaintiffs identified before denying their motion for a preliminary injunction.

## STATEMENT OF THE CASE

### A. Statutory and Regulatory Background

In the Every Student Succeeds Act, Pub. L. No. 114-95, 129 Stat 1802 (2015), Congress authorized the creation of a discretionary grant program to, among other things, "significantly improve the academic and developmental outcomes of children living in the most distressed communities of the United States," 20 U.S.C. § 7271(1); *see id.* §§ 7271-7275. Under that authority, the Department administers the Full-Service Community Schools Program (FSCS), a program supporting grantees that "provide comprehensive academic, social, and health services for students, students' family members, and community members that will result in improved educational outcomes for

children." U.S. Dep't of Educ., *Full-Service Community Schools Program (FSCS)*, https://perma.cc/2DNQ-AGCA.

The Department has general regulations governing the grants it administers. While the Department may approve a grant for a project that spans multiple years, "[t]he Secretary usually approves a budget period of not more than 12 months, even if the project has a multi-year project period." 34 C.F.R. § 75.251(a). To receive funding after the first budget period, a grantee must receive a "continuation award." *Id.* § 75.253(a). To obtain such an award, a grantee must do several things. It must "[d]emonstrate that it has made substantial progress in achieving … [t]he goals and objectives of the project." *Id.* § 75.253(a)(1)(i)(A). It must submit required reports, continue to meet the grant program's eligibility requirements, and maintain appropriate administrative and financial management systems. *Id.* § 75.253(a)(2)-(4). It also must "[r]eceive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government." *Id.* § 75.253(a)(5).

### B. Factual Background

Plaintiff Afterschool for Children and Teens Now (ACT Now) "is a statewide unincorporated organization based in Illinois that works to expand access to high-quality out-of-school time, community school, and youth development programs." Suppl. App. (SA) 4. Plaintiff Metropolitan Family Services (MFS) "is an Illinois nonprofit corporation and federally recognized tax-exempt organization that serves as ACT Now's fiscal sponsor. In that capacity, MFS holds ACT Now's federal grant awards … and is the official grantee of record for ACT Now's FSCS grants." *Id.* The Department awarded MFS two multi-year FSCS grants with January 1, 2024, through December 31, 2024, as the first budget period. SA 150-57. In December 2024, the Department issued MFS continuation awards for the 2025 budget period. SA 31.

In December 2025, the Department sent plaintiffs two notices stating that the Department had decided not to continue the two grants after the end of the 2025 budget period. SA 159-64. The Department explained that it had reviewed the grants and "determined that the grant [to plaintiffs] … provides funding for programs that reflect the prior Administration's priorities and policy preferences and conflict

with those of the current Administration." SA 159, 162. In particular, the notices explained that plaintiffs "proposed project activities that conflict with the Department's policy of prioritizing merit, fairness, and excellence in education." *Id.* As examples, the notice quoted statements from plaintiffs' grant application expressing plaintiffs' ability to provide "professional development on equity and inclusion," and "trainings on gender and sexuality" and "racial equity," and stating that plaintiffs would consider "[e]quity factors such as race and ethnicity" to "ensure the equitable distribution of funds to school districts."[1] SA 159 (quoting application); *see* SA 162 (identifying similar statements in second application). The Department also noted plaintiffs' representation that "[a]ll of our trainings are developed with a racial equity and cultural competency lens." SA 159 (quoting application), 163 (quoting second application).

Plaintiffs asked the Department to reconsider, stressing that ACT Now "ha[d] not implemented the trainings identified" by the Department's non-continuation notices "and never incorporated them into the

[1] Following the district court, *see* RSA A-2, we will refer to those aspects of plaintiffs' applications the Department found problematic as Diversity, Equity, and Inclusion (DEI)-related.

grant curriculum." SA 168 (emphasis omitted); *see* SA 175 (similar, concerning the second grant). On reconsideration, the Department adhered to its non-continuation decision. SA 182-86. It noted that plaintiffs' application had stated that "ACT Now's mission has equity and racial justice at its core" and that ACT Now intends to "ensure that equity is intentionally and sustainably integrated into all that we do." SA 182 (quoting application). It also noted that plaintiffs stated that "in identifying school districts with the most need," plaintiffs would "weigh … equity factors such as race and ethnicity" along with other factors such as "poverty rates" and "graduation rates," and that they would "require" "[s]chool districts … to consider gender, race, national origin, color, disability, and age when conducting their needs assessment." SA 183 (quoting application); *see* SA 185-86 (quoting second grant application).

### C. Prior Proceedings

Plaintiffs sued, alleging violations of the Administrative Procedure Act and various provisions of the Constitution and seeking a preliminary injunction. SA 1-27 (complaint); Dkt. 46 (motion for preliminary injunction).

1. After the district court dismissed several counts of plaintiffs' eight-count complaint on jurisdictional grounds, not at issue here, the court denied plaintiffs' motion for a preliminary injunction, considering only plaintiffs' remaining First Amendment claims.

The district court observed that although whether to grant a preliminary injunction requires consideration of a plaintiff's likelihood of success and irreparable harm, the balance of the equities, and the public interest, the first "factor is mandatory—the absence of a likelihood of success on the merits is dispositive." RSA A-4 (citing *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020)). The court held that plaintiffs are not likely to prevail on their argument that the Department's non-continuation decision violated plaintiffs' First Amendment rights by imposing "conditions on speech unrelated to what [plaintiffs] proposed to use grant funding for" or by "retaliat[ing] against [plaintiffs'] viewpoints generally." RSA A-7. The record "does not support" those claims, the court determined, and instead "suggests [that plaintiffs] were denied grant funding because of what they proposed to do with that funding." *Id.*

The district court explained that under the governing precedent addressing the government's selective funding of certain activities over others, the government has "wide latitude to set spending priorities." RSA A-7 (quoting *National Endowment for the Arts v. Finley*, 524 U.S. 569, 588 (1998)). The "general rule" is that "the government may 'selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way.'" *Id.* (quoting *Finley*, 524 U.S. at 588, in turn quoiting *Rust v. Sullivan*, 500 U.S. 173, 193 (1991)). However, the government may not impose "conditions that seek to leverage funding to regulate speech outside the contours of the program itself." RSA A-9 (quoting *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214-15 (2013)). The "line is that the government may pick and choose to fund methods of solving problems that it agrees with, but it may not regulate a person's speech generally, including by punishing people for expressing or holding disfavored viewpoints." *Id.*

The district court noted that "in their briefs and at argument," plaintiffs "did not disagree with the court's interpretation of *Rust* and

other cases in the selective-subsidy line and have not advanced an alternative theory about what those cases might mean." RSA A-10 n.4. That is, plaintiffs gave "the court no reason grounded in the Constitution to think that [the Department] is prohibited from adopting the view that funding such projects is not within its policy prerogatives and making grant decisions accordingly." RSA A-10 (footnote omitted). Instead, plaintiffs argued that the Department's non-continuation decision were "based on plaintiffs' views generally, as opposed to what they planned to use the grant funding for." RSA A-10 n.4. But the court "rejected" that "factual claim."[2] *Id.*

The district court rejected plaintiffs' contention that the Department imposed an explicit unconstitutional condition by "condition[ing] continuation funding on whether [p]laintiffs' previously approved applications align with the current Administration's preferred view-points." RSA A-12 (second alteration in original) (quoting complaint). "The government *is allowed* to condition grant funds on what the

---

[2] Plaintiffs also argued that even if the Department did not violate their First Amendment rights, it violated the Administrative Procedure Act by failing to undertake notice-and-comment rulemaking. RSA A-10 n.4. The district court rejected that argument as "a disguised contract theory over which the court lacks jurisdiction." *Id.*

grantee will use the funds for," the court stated. RSA A-13. And plaintiffs identified no constraint on plaintiffs' speech unrelated to the grant program. Indeed, "plaintiffs have not pointed to any stated condition on what they could say at all." RSA A-12. Accordingly, the court found that it "is clear that plaintiffs have not identified any explicit unconstitutional condition." RSA A-13.

Nor did plaintiffs establish that the Department imposed an implicit unconstitutional condition on plaintiffs' speech. Plaintiffs alleged that the Department had denied continuation funding based on plaintiffs' "expressive statements regarding [their] overarching values." RSA A-13 (quoting complaint). But the district court found that the Department had focused on those statements not to punish plaintiffs for their view-point but because the Department was concerned that the statements were evidence that plaintiffs might use the continuation funding for purposes that were inconsistent with the Department's priorities. RSA A-13-A-14. The court found plaintiffs' evidence that the Department was motivated by plaintiffs' views generally, apart from the grant program, to be "at best … quite weak." RSA A-14. "Plaintiffs made open-ended project proposals, said that they can facilitate DEI-related

projects, and then also said that '[e]quity is intentionally and sustainably integrated into all that [ACT Now] do[es].'" RSA A-15 (alterations in original) (quoting grant application). "In conjunction," the court found, "those capabilities and the stated mission suggest a genuine risk that plaintiffs will at some point use funds for DEI-related projects." *Id.* By contrast, the fact that "plaintiffs noted in their grant applications that they were ready and able to use grant funds for DEI-focused projects and they confirmed at the preliminary injunction hearing that they might provide such programming" was "strong evidence" that the Department "was concerned plaintiffs would use government funds for projects that conflicted with [the Department]'s policies." RSA A-13.

Because the evidence supported the conclusion that the Department declined to continue plaintiffs' grants based on what plaintiffs might do with the funding rather than on the viewpoints plaintiffs held, the district court held that plaintiffs are unlikely to prevail on their unconstitutional conditions claim or their "intertwined," RSA A-7, retaliation claim, so the court denied plaintiffs' motion for a preliminary injunction, RSA A-15.

## SUMMARY OF ARGUMENT

**I.** The district court found that the Department likely decided not to continue plaintiffs' funding because it did not want to risk that plaintiffs would use the funding for activities that were inconsistent with the Department's policy and priorities. Based on that finding, the court correctly held that the Department's decision is an instance of the government's choice about the activities it wishes to promote, which under longstanding precedent is consistent with First Amendment principles. Accordingly, the court correctly determined that plaintiffs are unlikely to succeed on their First Amendment claims and so properly declined to grant them preliminary relief.

Plaintiffs' contrary arguments lack merit. Plaintiffs first argue that only Congress may permissibly restrict the uses of government funding and that any limits imposed by the Executive Branch do not enjoy the wide latitude courts give the government in setting its spending priorities. Plaintiffs waived that argument by failing to make it in the district court. But it is wrong, in any event. Applicable precedent makes clear that limits imposed by the Executive Branch in implementing a

spending program are part of the permissible goals for which funding may be restricted without running afoul of the First Amendment.

Next, plaintiffs make numerous arguments challenging the district court's finding concerning the Department's motivation in deciding not to continue plaintiffs' funding. That determination is subject to clear-error review, which is highly deferential. Plaintiffs do not challenge the district court's finding that their applications represented that ACT Now was ready and able to undertake the activities to which the Department objected, and the court identified language in the Department's notices to plaintiffs that flag such activities as reasons for the Department's decision. The district court's finding concerning motivation is, at a minimum, a permissible inference from those facts and so must be upheld on clear-error review. Consequently, all of plaintiffs' arguments that assume that the Department's decision was based on viewpoint discrimination, such as those supporting their retaliation and unconstitutional-conditions claims, necessarily fail to establish their likelihood of success.

**II.** There is no basis for plaintiffs' contention that the district court was required to evaluate the injuries they identified and balance the equities after having determined that plaintiffs are unlikely to succeed on their First Amendment claims. This Court has recognized that establishing a likelihood of success is a mandatory requirement for preliminary relief. And after determining that a plaintiff failed to make that showing, this Court has expressly declined to consider any of the other factors in the preliminary-injunction analysis. But in any event, plaintiffs plainly have no equitable entitlement to the continued funding of grants that the government has validly terminated.

## STANDARD OF REVIEW

The Court "review[s] the district court's denial of [a] motion for a preliminary injunction for an abuse of discretion, viewing its legal conclusions de novo, and findings of fact for clear error." *Minocqua Brewing Co. v. Hess*, 160 F.4th 849, 851 (7th Cir. 2025). In reviewing for clear error, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

# ARGUMENT

## I. The District Court Correctly Determined That Plaintiffs Are Unlikely to Succeed on Their First Amendment Claims

### A. The Department's Action Was a Permissible Selective-Funding Decision

The Supreme Court has long recognized that the government may selectively fund certain programmatic activities while declining to subsidize others without running afoul of the First Amendment, so long as it does not penalize private speech outside the program. *Rust v. Sullivan*, 500 U.S. 173, 193-200 (1991). The Department's non-continuation decisions fit squarely within this doctrine.

In *Rust*, Congress required Title X funds to be used for family-planning services and prohibited the use of grant funds "in programs where abortion is a method of family planning." 500 U.S. at 178-80 (quotation marks omitted). The Department of Health and Human Services then promulgated detailed regulations implementing that prohibition. *Id.* at 178-81. The plaintiffs sued, arguing that the regulations violated their First Amendment rights. The Supreme Court upheld the implementing regulations because they reflected Congress's prerogative to define the program's contours and "encourage certain

activities it believes to be in the public interest, without at the same time funding an alternative program." *Id.* at 193. And the Court emphasized that selective funding is not "a penalty" on private speech; it merely reflects the government's choice of which activities to subsidize. *Id.* (quotation marks omitted); *see* RSA A-7-A-12 (discussing selective-funding doctrine); *National Endowment for the Arts v. Finley*, 524 U.S. 569, 587-88 ("[T]he Government may allocate competitive funding according to criteria that would be impermissible were direct regulation of speech or a criminal penalty at stake. So long as legislation does not infringe on other constitutionally protected rights, Congress has wide latitude to set spending priorities."); *see also, e.g., Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 24 F.4th 640, 646 (7th Cir. 2022) ("[The Supreme Court's] decisions show that the government is not required to subsidize activity simply because the activity is protected by the First Amendment.").

Here, the Department made the exact type of programmatic judgment *Rust* permits. FSCS is a multi-year discretionary grant in which continuation funding must satisfy five regulatory requirements, including the requirement that continuation "is in the best interest of

the Federal Government." 34 C.F.R. § 75.253(a)(5). As the district court found, SRA A-15, the record "at this stage" shows that it is "likely" that the Department decided not to authorize continuation funding because it "simply did not want to accept the risk that grant funds would be used on projects that are not in line with the current Administration's funding priorities." RSA A-15; *see* SA 159, 162 (statement in non-continuation notices that plaintiffs' projects "reflect the prior Administration's priorities and policy preferences and conflict with those of the current Administration," so they "no longer effectuate[] the best interest of the Federal Government"). That decision rests squarely within the Department's authority to define and update programmatic priorities in competitive discretionary grants. Conversely, the district court expressly found that plaintiffs are unlikely to show that the Department decided not to continue plaintiffs' grant funding because it disfavored plaintiffs' views independently of how those views might affect plaintiffs' use of the grant funds. RSA A-15 ("The court is thus not convinced that plaintiffs are likely to prove that the real motivation behind Education's funding decisions was the value statement … .").

### B. Plaintiffs' Contrary Arguments Lack Merit

Plaintiffs essentially make two arguments on appeal, one legal and one factual. Neither is meritorious.

1. First, plaintiffs argue that *Rust* and other selective-funding precedent recognize only Congress's authority to impose programmatic requirements affecting speech in federal grants and so does not authorize the Department's policy-based decision not to continue their grant funding. Br. 22-28. As an initial matter, because plaintiffs raise this argument "for the first time in their appellate brief, they have waived it for purposes of this appeal." *Henry v. Hulett*, 969 F.3d 769, 785 (7th Cir. 2020) (en banc); *see* RSA A-10 n.4 ("Plaintiffs, in their briefs and at argument, did not disagree with the court's interpretation of *Rust* and other cases in the selective-subsidy line and have not advanced an alternative theory about what those cases might mean.").

In any event, plaintiffs' argument is meritless. The First Amendment provides that "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. Despite the reference to "Congress," the amendment has long been understood to apply not only to legislation but also to actions by the Executive Branch. *See* Daniel J. Hemel,

*Executive Action and the First Amendment's First Word*, 40 Pepp. L. Rev. 601 (2013). But it would be extraordinary to suggest that the First Amendment permits Congress—the entity expressly regulated by the text—to take actions that the Executive Branch could not take.

Unsurprisingly, no case supports that odd conclusion, and indeed the cases refute it. In *Rust*, Congress generally prohibited the use of Title X funds for abortion counseling; the Executive Branch then promulgated detailed regulations implementing that prohibition with requirements not imposed by statute. 500 U.S. at 178-81; *see, e.g.*, *id.* at 180 (requiring funded programs to be "'physically and financially separate' from prohibited abortion activities" (quoting regulation)). The Supreme Court upheld the regulations as valid interpretations of statutory authority and emphasized that, consistent with the First Amendment, "[t]he Government" may, through statute *and* regulation, "selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way." *Id.* at 193; *see id.* at 194 (stating that the statute and implementing regulations "prohibit[] … a project grantee or its employees from engaging in

activities outside of the project's scope"). *Rust* thus held that the Executive Branch's discretionary decisions in implementing a congressionally authorized program do not violate the First Amendment by preferring one activity over another.

*Finley* confirms that the Executive may apply qualitative judgments about the scope of programmatic spending pursuant to a statutorily authorized spending program. In that case, the National Endowment for the Arts was directed by Congress to consider "general standards of decency and respect" in issuing grants. 524 U.S. at 572 (quotation marks omitted). Rejecting a facial First Amendment challenge to the statute, the Supreme Court held the agency could constitutionally exercise "substantial discretion" in applying those broad statutory criteria, stating that the Executive Branch's discretionary implementation of a funding program does not raise constitutional problems unless "viewpoint discrimination" is shown. *Id.* at 573, 587.

*Rust* and *Finley* thus make clear that Executive Branch actions identifying the metes and bounds of a government funding program are part of what define the "permissible goals" for which funding may be

used.[3] *Rust*, 500 U.S. at 194. And to the extent plaintiffs mean to suggest that the Executive Branch has acted beyond its authority in this case, that contention has no relevance to their First Amendment claim, which is the only one on appeal. *See* Br. 1, 3.

2. Next, plaintiffs make numerous arguments based on their disagreement with the district court's factual finding that the Department likely decided not to continue plaintiffs' grant funding because plaintiffs' applications had identified DEI-related activities as among those for which plaintiffs could use the FSCS funds, and the

---

[3] Discussing a footnote from the district court's opinion, plaintiffs contend that the Ninth Circuit's decision in *Thakur v. Trump*, 176 F.4th 1187 (9th Cir. 2026) (per curiam), *petition for cert. filed*, No. 26-210 (U.S. Aug. 18, 2026), supports their view that the Executive Branch may not through implementation define the contours of a congressionally authorized spending program. Br. 24 (discussing RSA A-7 n.3). Plaintiffs' reliance on *Thakur* is doubly misplaced. First, as noted above, plaintiffs have waived the underlying argument. *See* RSA A-8 (noting that "plaintiffs have not advanced the Ninth Circuit's view in their briefs or at argument"). Second, for the reasons provided above, the contention that the Executive Branch may not define the scope of a spending program is mistaken.

Plaintiffs also argue that the Department's policy decision in this matter is inconsistent with Congress's intent in establishing the FSCS program. Br. 25. That statutory argument is incorrect, but it is not based on plaintiffs' First Amendment claims, so it is outside the scope of plaintiffs' appeal. So, too, are plaintiffs' arguments that the Department could not adopt its policy without notice-and-comment rulemaking or publication in the Federal Register. *See* Br. 26; *see also supra* p.10 n.2.

Department "did not want to accept the risk that grant funds would be used on projects that are not in line with the current Administration's funding priorities." RSA A-15.

This Court reviews under the deferential clear-error standard a district court's factual findings related to the denial of a preliminary injunction, *Minocqua Brewing Co. v. Hess*, 160 F.4th 849, 851 (7th Cir. 2025), and cannot reverse as long as the district court's determination was a "permissible view[] of the evidence," *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). A district court's findings concerning a party's motivation are among the facts the Court reviews for clear error. *Reliable Money Ord., Inc. v. McKnight Sales Co.*, 704 F.3d 489, 501 & n.12 (7th Cir. 2013).

In supporting its conclusion that the government was motivated by the way plaintiffs would use the grant funds, the district court found that "plaintiffs noted in their grant applications that they were ready and able to use grant funds for DEI-focused projects and they confirmed at the preliminary injunction hearing that they might provide such programming." RSA A-13; *see* RSA A-13 n.6 (quoting statement by plaintiffs at hearing that ACT Now could use the grant funds for DEI-

related projects "[i]f that community determined that those kinds of programs were necessary"); *see* SA 480-82 (hearing transcript). The district court also found that "[t]he use of grant funding for such purposes was [the Department]'s chief justification for discontinuing plaintiffs' funding." RSA A-13; *see id.* ("[A]pplicant *has proposed project activities* that conflict with the Department's policy of prioritizing merit, fairness, and excellence in education." (quoting non-continuation notice)).

The district court considered plaintiffs' evidence that ACT Now "ha[d] not yet used any funds for DEI-related projects" and so informed the Department. RSA A-13. The court found that evidence non-probative concerning the Department's motive because plaintiffs' initial application and application for continuation funding left open the possibility that they could in the future use the funds for purposes that are inconsistent with the Department's policy. RSA A-14. The district court also found that plaintiffs' statements that they are able to use grant funding for DEI-related programming, when combined with the broad statements of value in plaintiffs' application—such as "[e]quity is intentionally and sustainably integrated into all that we do," RSA A-2

(quoting grant application)—likely led the Department to decide not to risk the possibility that grant funds would be used on projects inconsistent with the Department's policy and priorities, RSA A-15. For all these reasons, the district court properly found it likely that the Department decided to deny plaintiffs' continuation funding based on the Department's concerns about how plaintiffs could use the funds rather than on the views plaintiffs espoused, unconnected to their potential use of program funds. *Id.*

Plaintiffs argue that the district court's finding concerning the Department's likely motivation was "clearly erroneous," Br. 20, for two reasons: there is undisputed evidence in the record that ACT Now never used any of the grant funding it received for DEI-related projects and plaintiffs' applications did not "describe specific, proposed [DEI-related] grant activities." Br. 21; *see* Br. 20-22.

But plaintiffs nowhere dispute the district court's finding that plaintiffs' applications made clear that they were "ready and able" to use the funds for such purposes. RSA A-13. Plaintiffs' presentation at the preliminary-injunction hearing made clear that if a community ACT Now serves "determined that … [DEI-related] programs were

necessary" then ACT Now could provide those services. RSA A-13 n.6 (quotation marks omitted); SA 481. Indeed, plaintiffs' opening brief makes the same point. Plaintiffs note that some of the language of concern to the Department comes from "a section [of the application] proposing 'the *types of strategies*' that schools *might* employ given their unique 'populations, resources, and needs.'" Br. 20-21 (quoting Dkt. 3-4, at 53 (grant application)). And they quote testimony from the preliminary-injunction hearing in which the ACT Now Executive Director explained that "our services and activities had to be based on what grantees needed." Br. 22 (quoting SA 356); *see* SA 481 (similar explanation at preliminary-injunction hearing).

As the district court observed, plaintiffs' applications stated that ACT Now "has already developed a variety of trainings" on "equity and inclusion"; that it "offer[s] Gender and Sexuality" in certain "professional development courses" and "trainings"; that it "hosts a variety of trainings for educators focused on … racial equity" and that "[e]quity is intentionally and sustainably integrated into all that we do[.]" RSA A-2 (first and fourth alterations in original) (quoting Dkt. 3-4, at 40, 144 (grant applications)). The court also highlighted the Department's

explanation in its non-continuation notices that plaintiffs had "*proposed project activities* that conflict with the Department's policy of prioritizing merit, fairness, and excellence in education." *Id.* (quoting SA 159). From this evidence, it was clearly permissible, at an absolute minimum, for the district court to find that the Department likely chose not to continue plaintiffs' grant funding because it was concerned about the "risk that grant funds would be used on projects that are not in line with the current Administration's funding priorities." RSA A-15. Accordingly, the district court's finding concerning the Department's likely motivation was not clearly erroneous.

3. Plaintiffs' remaining arguments founder on their common assumption that the Department decided not to continue their grant funding because it disfavored their views. Plaintiffs' argument that they are likely to succeed on their retaliation claim is premised on the contentions that "there is no doubt that ACT Now's speech was a motivating factor in the Department's decision to discontinue funding" and that the Department did not "identify any non-retaliatory grounds" for its action. Br. 16, 18. Their argument about their unconstitutional-conditions claim similarly contends that the Department's action was

"driven by what ACT Now said in its application" and so seeks "to regulate speech" rather than by anything that ACT Now "did." Br. 19. These contentions are flatly inconsistent with the district court's finding that it is "likely" that the Department sought to avoid "the risk that grant funds would be used on projects that are not in line with the current Administration's funding priorities." SRA A-15. Plaintiffs do not argue that the Department's action, if based on such motivation, would constitute either retaliation or an unconstitutional condition. Plaintiffs have thus not shown that the district court abused its discretion in denying their motion for a preliminary injunction.

## II. Having Concluded That Plaintiffs Are Unlikely to Succeed, the District Court Was Not Required to Balance the Equities, Which Do Not Support Plaintiffs in Any Event

Finally, plaintiffs argue that the district court abused its discretion in denying their motion for a preliminary injunction because it failed to make findings and weigh the irreparable injury plaintiffs identify. Br. 29-30. That consideration is necessary, plaintiffs contend, because in this Circuit, district courts employ a sliding-scale analysis when evaluating a request for a preliminary injunction: "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to

weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Plaintiffs argue that the district court's failure to make findings about irreparable injury and undertake a balancing analysis was an abuse of discretion requiring reversal. Br. 30.

This Court has made clear, however, that the balancing analysis comes into play only after a plaintiff has made a threshold showing that "he is *likely* to succeed on the merits." *Mays*, 974 F.3d at 822 (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The *degree* of that likelihood "depends on the facts of the case at hand because of [the Court's] sliding scale approach." *Id.* But if a district court determines that a plaintiff is *not* likely to succeed on the merits, it must deny a preliminary-injunction motion regardless of where the remaining factors point.[4] *See Illinois Tamale Co. v. LC Trademarks, Inc.*, 164 F.4th 648, 662 (7th Cir. 2026) ("Iltaco has not established a likelihood of success on the merits. Accordingly, we do not proceed to the harms-balancing or public interest steps of the preliminary

---

[4] Plaintiffs effectively concede as much in their summary of argument, though they do not address the point in their actual argument. *See* Br. 14 ("[B]ecause ACT Now established some likelihood of success on the merits, the district court erred by failing to assess and weigh the risk of irreparable harm … .").

injunction analysis."); *see id.* ("Only upon a showing of likelihood of success on the merits, the court weighs the harm of denying an injunction." (alterations omitted) (quoting *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 844 (7th Cir. 2023))).

Despite plaintiffs' claims to the contrary, Br. 29-30, the preliminary-injunction analysis in cases involving alleged First Amendment violations is no different. In *Illinois Republican Party v. Pritzker*, the plaintiff claimed that a state "executive order violates the Free Speech Clause of the First Amendment." 973 F.3d 760, 762 (7th Cir. 2020). This Court affirmed the district court's denial of the plaintiff's preliminary-injunction motion because it determined that the plaintiff had not shown that it was likely to succeed on its First Amendment claims. *Id.* at 763-71. The Court did not consider the plaintiff's injuries, engage in any balancing test, or consider the public interest.

In any event, plaintiffs' claims of irreparable harm fall flat considering the lack of merit of their First Amendment theory. Their assertion that courts presume irreparable harm in First Amendment cases, Br. 29, would be relevant only if the district court erred in rejecting their First Amendment claim. And their claims of harm based

on the failure to receive grants to which they are not entitled could not plausibly justify a preliminary injunction.

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's order denying the preliminary injunction.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ANDREW S. BOUTROS
*United States Attorney*

DANIEL TENNY

*s/ Lewis S. Yelin*
LEWIS S. YELIN
*Attorneys, Appellate Staff*
*Civil Division, Room 7239*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3425*

September 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,700 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/Lewis S. Yelin*
Counsel for Defendants-Appellees